**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**LEONIDAS SIERRA,**

        Plaintiff,

      v.                              **Civil Action No.: 5:22-CV-105**
                                                  Judge Bailey

**UNITED STATES OF AMERICA,**

        Defendant.

## REPORT AND RECOMMENDATION

### I. Background

On April 22, 2022, plaintiff initiated this *pro se* civil action by filing a complaint under the Federal Tort Claims Act ("FTCA"). On July 19, 2022, the Court directed the defendant to file an answer. On October 18, 2022, defendant filed a Motion to Dismiss for Lack of Jurisdiction [Doc. 31]. However, on November 28, 2022, this Court granted a motion for leave to amend, and on December 12, 2022, plaintiff filed the Second Amended Complaint [Doc. 51] (the "Complaint"). On December 23, 2022, defendant filed a Motion to Dismiss [Doc. 52], along with a memorandum in support. On January 20, 2023, plaintiff filed a Motion in Opposition [Doc. 61], along with a memorandum in support, which the Court construes as plaintiff's response to the motion to dismiss. The Motion to Dismiss is now fully briefed and ripe for decision. This matter is assigned to the Honorable John Preston Bailey, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the

undersigned recommends that the Motion to Dismiss be granted in part and denied in part.

## II. The Pleadings

In his Second Amended Complaint, plaintiff alleges that on May 19, 2021, a corrections officer with the Federal Bureau of Prisons, Officer C. Wadlow, ordered plaintiff out of his cell and to submit to a pat-frisk search.  Plaintiff did so and Officer Wadlow removed a manila envelope from plaintiff's right hand and ordered plaintiff to remove his sneakers.  When plaintiff bent down to remove his sneakers, Officer Wadlow "became aggressive" and wrestled plaintiff to the floor.  Plaintiff maintains that throughout this event, he was not struggling or resisting.  Officer Wadlow then restrained plaintiff, lifted plaintiff off the floor and slammed plaintiff's face into a door/wall without provocation.  This split plaintiff's right eyebrow and caused him a concussion.  Plaintiff further alleges that since that incident, he has suffered from mental distress including nightmares, flashbacks, anxiety, depression, and a mental health crisis in which he self-harmed on June 22, 2022. Based on these allegations, plaintiff asserts claims for (1) assault and battery; (2) negligent infliction of emotional distress; and (3) "unnecessary and excessive use of force."

On December 23, 2022, defendant filed the instant Motion to Dismiss.  The Government argues that this Court lacks jurisdiction over plaintiff's claims because they are subject to the FTCA's intentional tort exception and thus the United States has not waived sovereign immunity.  Further, defendant argues that claim three should be dismissed because plaintiff did not exhaust administrative remedies as to that claim and

because excessive use of force is not an independent actionable tort under West Virginia law.

### III. Standard of Review

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction.  A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975).  Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction.  No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  *See Materson v. Stokes*, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  *See* Fed. R. Civ. P. 12(h)(3).

The Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe plaintiff's pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam); *Erikson v. Pardus*, 551 U.S. 89, 94 (2007).  While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, *Haines*, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal.  *Id*. at 520–21.  The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on

which the plaintiff could prevail, it should do so.  ***Barnett v. Hargett***, 174 F.3d 1128 (10th Cir. 1999).  However, a court may not construct the plaintiff's legal arguments for him.  ***Small v. Endicott***, 998 F.2d 411 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  ***Beaudett v. City of Hampton***, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV. Analysis

The United States enjoys sovereign immunity except to the extent that Congress has waived such immunity through the FTCA.  The FTCA provides that:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674.  A prisoner "can sue under the Federal Tort Claims Act to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee."  ***United States v. Muniz***, 374 U.S. 150, 150 (1963).

The FTCA's waiver of sovereign immunity is subject to a number of exceptions, with the majority codified in 28 U.S.C. § 2680.  One exception is that the Government is generally not liable for intentional torts of its employees:

> The provisions of this chapter and section 1346(b) of this title shall not apply to--
> . . . .
> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this

4

subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h).  Thus, in general a plaintiff cannot bring a claim under the FTCA for an intentional tort committed by a Government employee; however, under the "law enforcement proviso," claims for assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution may be brought in regard to the acts or omissions of "investigative or law enforcement officers."  The law enforcement proviso extends *only* to acts or omissions of the law enforcement officers that arise "within the scope of their employment."  ***Millbrook v. United States***, 569 U.S. 50, 50 (2013).

In the instant case, plaintiff alleges that Officer Wadlow used excessive force by lifting plaintiff off the ground and slamming plaintiff's face against a wall/door, causing plaintiff a concussion.  Plaintiff raises three claims in his Complaint: (1) assault and battery; (2) negligent infliction of intentional distress; and (3) unnecessary and excessive force.  Although stated as different claims and with different injuries, the alleged conduct which gave rise to each of the three claims is the same: the May 19, 2021 incident in which Officer Wadlow is alleged to have wrestled plaintiff to the ground, restrained plaintiff, then lifted plaintiff off the floor and slammed his face into the door/wall.  *See* [Doc. 51 at 7–10].  All three claims are dependent upon that conduct and thus "arise out of" the alleged assault and battery.  *See **Raikes v. United States***, No. 106-CV-76, 2007 WL 546652, at *2 (N.D. W.Va. Feb. 16, 2007) (Keeley, J.) (citing ***Harms v. United States***, 972 F.2d 339 (4th Cir. 1992) (unpublished) (per curiam)).

Because plaintiff's claims all arise out of the alleged assault and battery, the intentional tort exception of 28 U.S.C. § 2680(h) applies.  However, for the purposes of

§ 2680(h), the Government concedes that Officer Wadlow was employed as a law enforcement officer, and thus the law enforcement proviso applies to plaintiff's claims. Accordingly, the Court must determine whether Officer Wadlow was acting "within the scope of his employment."

The question of whether Officer Wadlow was acting within the scope of employment for purposes of the FTCA is governed by West Virginia law.  *See Doe v. Meron*, 929 F.3d 153, 165 (4th Cir. 2019); *Totten v. Scaife*, No. CV 3:21-0306, 2022 WL 211592, at *4 (S.D. W.Va. Jan. 24, 2022) (Chambers, J.).  In West Virginia, "[a]n act specifically or impliedly directed by the master, or any conduct which is an ordinary and natural incident or result of that act, is within the scope of the employment."  Syl. Pt. 6, *Courtless v. Jolliffe*, 203 W. Va. 258, 260, 507 S.E.2d 136, 138 (1998) (citation omitted).

Determining the scope of employment is normally a question of fact:

> Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when "the facts are undisputed and no conflicting inferences are possible." In some cases, the relationship between an employee's work and wrongful conduct is so attenuated that a jury could not reasonably conclude that the act was within the scope of employment.

*W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 509, 766 S.E.2d 751, 768 (2014) (quoting *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 213, 814 P.2d 1341, 1347 (1991)).  The Supreme Court of Appeals of West Virginia has further explained that:

> In general terms, it may be said that an act is within the course of the employment, if: (1) It is something fairly and naturally incident to the business and (2) it is done while the servant was engaged upon the master's business and is done, although mistakenly or ill-advisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external,

independent and personal motive on the part of the servant to do the act upon his own account.

*Foodland v. State ex rel. WV Dep't of Health & Hum. Res., Bureau of Pub. Health/Women, Infant & Children's (WIC) Supplemental Food Program*, 207 W. Va. 392, 396, 532 S.E.2d 661, 665 (2000).  "Analysis of the question of scope of employment mandates consideration of the circumstances including the character of the employment, the nature and character of the tortious conduct, and the time, place and purpose of the conduct."  *Roof Serv. of Bridgeport, Inc. v. Trent*, 244 W. Va. 482, 495, 854 S.E.2d 302, 315 (2020) (citation omitted).

"The 'purpose' of the act is of critical importance and this element echoes throughout our jurisprudence."  *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 510, 766 S.E.2d 751, 769 (2014).  In that case, the Supreme Court of Appeals of West Virginia held that a prison corrections officer was not acting within the scope of his employment when he allegedly repeatedly raped a prisoner.  The Supreme Court noted:

> We recognize that by virtue of his position as a correctional officer, D.H. was unquestionably in a particularly unique position to perpetrate such acts, if any. However, the mere proximity and opportunity that his job provided to commit such acts do not, alone, bring them within the scope of his employment. Moreover, not only were D.H.'s alleged acts criminal in nature, they were specifically criminalized by statute for all jail or correctional facility employees. Therefore, D.H. did not just allegedly commit acts which also "happened" to be a crime; he allegedly committed acts which were so divergent from the scope of his duties they were made expressly felonious if committed by him in that context.

*W. Virginia Reg'l Jail & Corr. Facility Auth.*, 234 W. Va. at 510, 766 S.E.2d at 769 (2014).  Here, the Government argues that the instant case is analogous to *W. Virginia Regional Jail* because the alleged assault and battery is criminal and "specifically

7

criminalized" by 18 U.S.C. § 242 and prohibited by Bureau of Prisons policy.

The undersigned is unpersuaded by this analogy.  The ***W. Virginia Regional Jail***
Court found that rapes committed by a corrections officer were "so divergent from the
scope of his duties that they were expressly made felonious if committed by him in that
context" because West Virginia had a statute specific to that context:

> Any person employed by . . . a jail or by the Regional Jail and Correctional
> Facility Authority . . .who engages in sexual intercourse, sexual intrusion or
> sexual contact with a person who is incarcerated in this state is guilty of a
> felony and, upon conviction thereof, shall be confined in a state correctional
> facility under the control of the Commissioner of Corrections for not less
> than one nor more than five years or fined not more than $5,000.

W. Va. Code § 61-8B-10(a) (2012) (amended 2022).  In contrast, the statute cited by the
Government is not specific to the context of prisons:

> Whoever, under color of any law, statute, ordinance, regulation, or custom,
> willfully subjects any person in any State, Territory, Commonwealth,
> Possession, or District to the deprivation of any rights, privileges, or
> immunities secured or protected by the Constitution or laws of the United
> States, or to different punishments, pains, or penalties, on account of such
> person being an alien, or by reason of his color, or race, than are prescribed
> for the punishment of citizens, shall be fined under this title or imprisoned
> not more than one year, or both; and if bodily injury results from the acts
> committed in violation of this section or if such acts include the use,
> attempted use, or threatened use of a dangerous weapon, explosives, or
> fire, shall be fined under this title or imprisoned not more than ten years, or
> both; and if death results from the acts committed in violation of this section
> or if such acts include kidnapping or an attempt to kidnap, aggravated
> sexual abuse, or an attempt to commit aggravated sexual abuse, or an
> attempt to kill, shall be fined under this title, or imprisoned for any term of
> years or for life, or both, or may be sentenced to death.

18 U.S.C. § 242.  While there is no doubt that this statute is applied in the prosecution of
abuses by corrections officers, it clearly has a much broader applicability, and does not
"specifically criminalize by statute for all jail or correctional facility employees."

Likewise, the undersigned does not find the Government's citation to the Bureau

8

of Prisons policy on use of force dispositive.  The cited policy, BOP Program Statement 5566.06 authorizes use of force "only as a last alternative" and "only that amount of force necessary."  While this is certainly evidence of the scope of a BOP employee's scope of employment, as set forth above, conduct can be within the scope of employment in West Virginia even if done "mistakenly or ill-advisedly."  The record contains few details which would allow the Court to infer the purpose of Officer Wadlow's conduct.  The alleged assault and battery occurred as Officer Wadlow was conducting a search of plaintiff. Construing the facts in the light most favorable to plaintiff, Officer Wadlow's actions, even if mistaken or ill-advised, may have been at least in part due to a desire to ensure institution security.  *See, e.g.* ***Maclean v. Secor***, 876 F. Supp. 695, 705 (E.D. Pa. 1995) (claim for intentional infliction of emotional distress for being threatened during interrogation by BOP regarding a harassing letter written to a female staff member was within the scope of employment because BOP staff's conduct was motivated by a desire to promote prison security); ***Hoston v. Silbert***, 681 F.2d 876, 880 (D.C. Cir. 1982) (fatal beating of prisoner by U.S. Marshal was within scope of employment where the prisoner was in marshals' custody and there was thus a purpose to serve the employer).

Accordingly, the undersigned recommends that the motion be denied as to this argument.  As noted above, however, the issue of scope of employment is normally a question of fact, and the motion should be denied without prejudice as to defendant's right to raise this issue at a later stage of the proceedings.

Finally, the undersigned agrees with defendant that plaintiff's third claim, for "unnecessary and excessive use of force" should be dismissed.  The FTCA does not create an independent cause of action; it instead allows plaintiffs to hold the United States

liable where a private individual would be liable under similar circumstances for state law tort in the relevant jurisdiction.   *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001).   As the Government points out, excessive use of force is not an independent actionable tort claim under West Virginia law.   Plaintiff argues that *Harrah v. Leverette*, 165 W.Va. 665, 271 S.E.2d 332 (1980) undermines the Government's argument. However, the Supreme Court of Appeals of West Virginia has stated that "[t]here simply is no language in *Harrah* adopting an implied cause of action for a constitutional violation. Rather, it is explained in the body of the opinion that '[a] single spontaneous attack by a guard may simply be a common law tort[.]'"   *Fields v. Mellinger*, 244 W. Va. 126, 132, 851 S.E.2d 789, 795 (2020).   And although this Court has a duty to construe plaintiff's *pro se* pleading liberally, this claim should properly be construed as a claim for assault or battery, which is already asserted in his first claim.   Accordingly, the Motion should be granted as to claim three.

### V. Recommendation

For the reasons set forth above, it is the undersigned's recommendation that the Motion to Dismiss [**Doc. 52**] be **GRANTED IN PART AND DENIED IN PART**, the Motion to Dismiss for Lack of Jurisdiction [**Doc. 31**] be **DENIED AS MOOT**, and that claim three of the Complaint be dismissed with prejudice.

The parties shall have **fourteen days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**   A copy of such objections should also be submitted to the United States District Judge.  Objections shall not exceed ten

(10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is **DIRECTED** to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is further **DIRECTED** to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to plaintiff's last known address as reflected on the docket sheet.

**DATED**: March 14, 2023.

*ls  James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE